SCULLIN, *et al.*, RECEIVERS MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* THOMASON.

Opinion delivered January 17, 1916.

RAILROADS—DEATH OF EMPLOYEE—JERK OF TRAIN—ORDINARY RISK.—Where deceased, a brakeman employed on defendant's freight train, was thrown from the train and killed, by a mere jerk of the train, incident to the stopping of the train at a given point, and where the train did not move at all, except for such jerk in the taking up of the slack in the train, the railroad company will not be liable for such death, such slight movements of the train being necessarily incident to the operation of trains, and being an ordinary danger, the risk of which the employee assumed when he entered the service.

Appeal from Carroll Circuit Court; *J. S. Maples,* Judge; reversed.

*W. B. Smith, J. Merrick Moore* and *H. M. Trieber,* for appellants.

1. This case comes within Federal Employer's Liability Act, and the evidence clearly shows it to be one of assumed risk. 233 U. S. 492. No appliances were out of order or defective, nor was there any violation of the Safety Appliance Acts. 95 Ark. 560; 90 *Id.* 387; 56 *Id.* 232. Jerks and other movements in operating freight trains are common and necessary. In no other way can such trains be handled, and an experienced brakeman is

held chargeable with notice and knowledge that they are likely to occur. This is one of the ordinary risks incident to employment. 161 S. W. 246; 47 *Id.* 922; 167 *Id.* 128.

The doctrine of assumed and continued risks is well illustrated by the blocked frog cases. 82 Ark. 11; 53 *Id.* 117; 54 *Id.* 389; 77 Ark. 367. See, also, 89 Ark. 427; 93 *Id.* 564; 104 *Id.* 489; 113 *Id.* 86.

2. The evidence leaves the whole question to speculation and conjecture and hence not sufficient to sustain the verdict. 76 S. W. 502.

3. Injury or death caused by the running of a train to an employee engaged in the operation of the train raises no presumption of negligence or liability. 100 Ark. 467; 100 *Id.* 426.

*H. A. Gardner,* for appellee.

1. This is not a case where the cause of death is wholly speculative or conjectural. The court submitted the case to a jury on instructions embodying two grounds of negligence, viz.:

(1) Negligently shoving the train backward without signal or warning. (2) In negligently backing the engine and cars when same could have been pulled forward under the spout of the tank.

A railroad is liable for damages "for injuries done or caused by running its trains." Circumstantial evidence is sufficient to submit the case to a jury, and their finding as to negligence is conclusive. 172 Mo. App. 334. Plaintiff has met the requirements that he must establish negligence or show facts from which the jury may reasonably infer that the company was negligent. 73 Mo. 219-233. The presumption is that deceased was in the exercise of ordinary care, and this presumption is not overcome by the mere fact of injury. 171 Mo. App. 173; 106 *Id.* 657; 80 S. W. 364; 100 Mo. 680; 227 *Id.* 366; 177 Mo. App. 296; 157 S. W. 1016; 156 *Id.* 4; 73 Mo. 233; 133 Mo. App. 149; 191 U. S. 65; 81 Atl. Rep. 440.

The negligence of the company and the proximate cause of death were properly submitted to the jury. 227 Pa. 66; 75 Atl. 991; 165 Fed. 869; 24 L. R. A. 531; 29 Atl.

151; 78 *Id.* 37; 191 U. S. 64; 196 *Id.* 51; 119 Fed. 293; 150 U. S. 349; 170 *Id.* 665, etc.

2. Failure to use or exercise ordinary care is an extraordinary risk which servants do not assume. 204 Mo. 507, 521; 207 *Id.* 416; 124 Mo. App. 619; 125 *Id.* 193; 135 Mo. App. 671; 58 U. S. Law. Ed. 1070; 174 S. W. 129; 58 L. Ed. U. S. 912.

3. Deceased's contributory negligence is no defense; and there was no assumed risk. 205 U. S. 1; 169 Fed. 372; 106 S. W. 441; 94 C. C. A. 657. No proper signal was given as required by the rules of the company.

McCULLOCH, C. J. This is an action to recover damages on account of injuries sustained by reason of the death of plaintiff's intestate while working as brakeman in the service of the receivers of the railroad company. The train on which plaintiff's intestate was working was being operated in interstate traffic and plaintiff's cause of action, if any existed, is based upon the Federal statute regulating the liability of railroad employers. There was a judgment below in plaintiff's favor and the defendants have appealed.

Plaintiff's intestate, Lee Thomason, was head brakeman on a freight train, and was killed about midnight at Everton, a station in Boone County, Arkansas. There was a tank at the station, and the train, as it came to the station, was stopped at the tank for the purpose of taking water. Shortly thereafter Thomason's dead body was found under the front trucks of an oil tank car, which was the second car back of the engine. The conductor of the train, who was introduced as a witness by plaintiff, testified that when the train stopped at the tank he got out, as usual, for the purpose of walking up alongside of the train to make a casual examination as to the condition of the train, and that in making this examination he found the body of Thomason, as before stated. He testified that the last time he saw Thomason was at St. Joe, the last station at which the train was stopped before reaching Everton. There was no direct testimony showing how Thomason came to his death, but the plaintiff introduced two

witnesses whose testimony tended to show that he fell from the train while the train was being "spotted" for the water tank. The two witnesses were men who were out in front of a house a short distance from the tank, and they testified that as the train approached the tank, they saw the light of a lantern moving along the side of the oil tank car, which was a short distance behind the engine. They could not see the man holding the lantern, but could tell from the movement that it was in the hands of some person moving along the side of the tank car. They saw the reflection of the light on the side of the oil tank, and on the end of the box car in front. They testified that the train came to a stop, and immediately moved slightly backward, and then forward, and that as this movement was made, they saw the lantern fall from the side of the car. The testimony of those two witnesses justifies the inference that Thomason was walking along the running board on the tank car with his lantern in his hand, and that the jerk or movement of the train threw him off, and that he fell under the trucks and was killed. The testimony also warrants the finding that no signal was given of the movement of the train, and the plaintiff contends that this was in violation of one of the rules of the company, which provides that a signal of three blasts is to be given to indicate the backing of the train when standing. It is not contended that there was negligence in any other respect, and it must be conceded that unless the rules just referred to applied to the movement of the train when "spotting" the tender at the tank, there was no negligence of the trainmen which would render the defendants liable in this case.

We are of the opinion that, according to the undisputed evidence in this case, the train was not being moved within the meaning of the rules which require the giving of signals. The only testimony on the subject was adduced by the plaintiff, and the testimony of each of the three witnesses who testified on that subject (including the conductor) shows that the train was not being moved, but that merely the slack was being taken up in the effort

to "spot" the tender of the engine at the spout of the tank. The conductor testified that he was in the caboose when the train came to a stop at the tank, and that there was no other movement of the whole train. He said that the caboose did not move at all. The other two witnesses merely said that the train was being lined up or "spotted" at the tank, and that when it first stopped there was a backward movement, and then a forward movement without signals being given. Viewing this testimony in its strongest light, it does not warrant the inference that the train was being moved about, except that the slack was being taken up and a slight movement forward to connect the spout of the tank with the tender of the engine so as to take water.

The testimony of one of the witnesses on this point is as follows:

Q. Now, as you stood there watching, did the train stop or did the train go through the station?

A. Stopped there.

Q. Did it come to a full stop?

A. I couldn't tell for sure—it stopped there to take water, and of course, they come to the full stop for that purpose.

Q. As you noticed it did stop?

A. Yes, it stopped there right smart little while.

Q. Now, then, what did it do after it stopped?

A. I couldn't tell you; I went to bed.

Q. But before you went to bed while you were out there when the train stopped, what occurred immediately after it stopped, or soon after?

A. Never noticed anything unusual; I saw a light behind the engine drop down, but I just supposed it was a brakeman or conductor.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Q. What was done just before the light went down?

A. The only thing I noticed it seems that the engine didn't get quite stopped, line up—didn't get quite lined up for the stop, and it seemed he moved his engine.

Q.  Which way?

A.  I couldn't say; I couldn't tell in the dark; I couldn't tell whether it was moved backward or forward.

Q.  What did you hear, Mr. Cooper?

A.  I heard a noise as if the slack was taken up in the cars.

Q.  Tell the jury what you understand by slack.

A.  The slack of a train is the slack in those draw-bars, and when the engine takes up slack it makes a rattling noise.

Q.  You heard the rattling noise, and it seemed as though they were taking slack?

A.  Yes.

Q.  At what time did you say?

A.  Well, just about that time the light dropped off the car, it seems that the light dropped just as the slack of the train was moving one way or the other—I don't know which way that slack was taken.

Q.  You heard the noise, and just at that time you saw the light drop down?

A.  The best I remember, the light dropped just prior to the noise I heard; I couldn't tell what become of the light.

The testimony of the other witness on this subject was as follows:

Q.  Now, you say that it seems they didn't quite make the right kind of a stop at the water tank; could you see anything about that?

A.  No, sir.

Q.  You couldn't tell whether they were at the right place, could you?

A.  I could just see the bulk of the cars.

Q.  And it just seems that they didn't stop right?

A.  Yes, sir.

Q.  That is just guesswork; you didn't know about that?

A.  No.

Q. You said it seemed as if he couldn't go forward and that he took up the slack, you heard a noise—heard both noises?

A. **Yes, sir.**

Q. You can tell the difference?

A. I can tell when they take slack or go forward.

Q. You could tell from the noise when they went forward or backward? Now, you say that they went backward, and you saw this light go down, all occurred at the same time—just instantly with the backing of the cars the light went down?

A. Yes, sir.

The statement of the conductor is that the caboose was not moved at all after they stopped at the tank, and it necessarily results from his testimony, if true, that there was no movement except that the cars at the front end of the train were moved in taking up the slack, and perhaps a slight forward movement to connect with the spout of the tank. It is clear, we think, that this does not come within the rule, as the train was not being put in motion. Those rules were adopted to govern the movements of trains, and not to require signals of the jerks incident to stopping at a given point. Such movements are necessarily incident to the operation of trains, and are among the ordinary dangers, the risk of which the employees assume when they take service.

Nothing is proved in this case which supports a charge of negligence against those who were operating the train. This being true, the judgment of the trial court is without any evidence to sustain it, and it is therefore reversed and the cause is dismissed.